NANCY ANN BUFFINGTON,

        Plaintiff,

v.                                   Case No: 6:11-cv-1114-Orl-22GJK

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

# REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT:

Claimant, Nancy Ann Buffington, appeals from a final decision of the Commissioner of Social Security (hereafter "Commissioner") denying her application for disability benefits (hereafter "Application"), alleging a disability onset date of January 24, 2008. Doc. No. 1. Claimant raises three issues on appeal. First, Claimant argues that the Administrative Law Judge (hereafter "ALJ") erred in failing to give Stephen Oh's, M.D., Claimant's treating psychiatrist, residual functional capacity (hereafter "RFC") opinion controlling weight. Doc. No. 16 at 10-14. Second, Claimant argues that the ALJ erred in finding that certain of her impairments were not severe. Doc. No. 16 at 14-2. Third, Claimant argues that the ALJ failed to include all of her limitations in the hypotheticals posed to the vocational expert. Doc. No. 16 at 22-24.

Claimant requests the Commissioner's decision be reversed for an award of benefits. Doc. No. 16 at 25. Alternatively, Claimant requests the Commissioner's decision be reversed and remanded for a new hearing. Doc. No. 16 at 25. For the reasons set forth below, it is **RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED**.

## I.     MEDICAL AND OPINION EVIDENCE

### A.  Treating Doctors

#### 1.  Stephen Oh, M.D.

Psychiatrist Stephen Oh, M.D., treated Claimant from 2005 through 2009.  R. 555-75, 605-09, 624-29.  On May 9, 2005, Dr. Oh completed his initial psychiatric assessment.  R. 567-72.  Dr. Oh noted that Claimant suffers from Chronic Obstructive Pulmonary Disease (hereafter "COPD") and takes medication for it.  R. 570.  In his mental status examination, Dr. Oh noted that Claimant had an appropriate mood and was euthymic.  R. 571.  Dr. Oh noted that Claimant's thought processes were coherent and relevant and that she was not experiencing any hallucinations or delusions.  R. 571.  Dr. Oh noted that Claimant's recent and remote memory were ok, but her attention and concentration were impaired.  R. 571.  Dr. Oh noted that Claimant had fair judgment and insight, along with average intelligence.  R. 571.  Dr. Oh diagnosed Claimant with attention deficit hyperactivity disorder (hereafter "ADHD").

On July 8, 2005, Dr. Oh indicated that Claimant keeps forgetting to take her medication and that she requested a prescription for Adderall.  R. 566.  Dr. Oh indicated that Claimant feels depressed at times and her eating had increased while taking her current medication.  R. 566.  Dr. Oh noted that Claimant's thought processes were coherent, relevant, organized and goal oriented, and her thought content was clear.  R. 566.  Dr. Oh noted that Claimant's mood was euthymic, her affect was appropriate, she was alert and oriented times 3, but she had poor concentration.  R. 566.

On August 18, 2006, Dr. Oh indicated that Claimant was doing well and recently changed to Dr. Peck as her primary care physician.  R. 565.  Dr. Oh noted that Claimant's thought processes were coherent, relevant, organized and goal oriented, and her thought content

was clear.  R. 565.  Dr. Oh noted that Claimant's mood was euthymic, her affect was "full range" and she was alert and oriented times three.  R. 565.

On December 29, 2006, Dr. Oh indicated that Claimant was doing well, had lost weight and started taking medication to stop smoking.  R. 564.  Dr. Oh noted that Claimant's thought processes were coherent, relevant, organized and goal oriented, and her thought content was clear.  R. 564.  Dr. Oh noted that Claimant's mood was euthymic, her affect was "full range" and she was alert and oriented times three.  R. 564.

On March 16, 2007, Dr. Oh indicated that Claimant experienced an episode of feeling edgy, palpitations and dizziness after eating dinner and chocolate.  R. 563.  Dr. Oh indicated that Claimant went to a doctor but no pathology was identified.  R. 563.  Dr. Oh reported that Claimant was under stress at work.  R. 563.  Dr. Oh indicated that he discussed the possibility that Claimant was experiencing anxiety or hypoglycemia after eating sweets.  R. 563.  Dr. Oh noted that Claimant's thought processes were coherent, relevant, organized and goal oriented, and her thought content was clear.  R. 563.  Dr. Oh noted that Claimant's mood was euthymic, her affect was appropriate and she was alert and oriented times three.  R. 563.

On July 18, 2007, Dr. Oh indicated that Claimant was doing well and had started a new job.  R. 562.  Dr. Oh noted that Claimant's thought processes were coherent, relevant, organized and goal oriented, and her thought content was clear.  R. 562.  Dr. Oh noted that Claimant's mood was euthymic, her affect was "full range" and she was alert and oriented times three.  R. 562.

On November 2, 2007, Dr. Oh indicated that Claimant had a new job and reported that the Adderall lasts three hours.  R. 561.  Dr. Oh discussed changing Claimant's medication to Vyvanse.  R. 561.  Dr. Oh noted that Claimant's thought processes were coherent, relevant,

organized and goal oriented, and her thought content was clear. R. 561. Dr. Oh noted that Claimant's mood was euthymic, her affect was appropriate, she was alert and oriented times three and has poor concentration. R. 561.

On March 6, 2008, Dr. Oh indicated that Claimant was fired from her job and was working at a leather store. R. 560. Dr. Oh indicated that Claimant reported the Adderall wore off around 3 p.m. and that she has emphysema. R. 560. Dr. Oh noted that Claimant's thought processes were coherent, relevant, organized and goal oriented, and her thought content was clear. R. 560. Dr. Oh noted that Claimant's mood was euthymic, her affect was "full range" and she was alert and oriented times three. R. 560.

On June 4, 2008, Dr. Oh indicated that Claimant was withdrawn at home, collecting unemployment, and feeling lonely, isolated and depressed. R. 559. Dr. Oh noted that Claimant's thought processes were coherent, relevant, organized and goal oriented, and her thought content was clear. R. 559. Dr. Oh noted that Claimant's mood was depressed, her affect was appropriate, she was alert and oriented times three and she had poor concentration. R. 559.

On September 4, 2008, Dr. Oh indicated that Claimant was not working, was experiencing financial stress and felt anxious and nervous. R. 557. Dr. Oh noted that Claimant's thought processes were coherent, relevant, organized and goal oriented, and her thought content was clear. R. 557. Dr. Oh noted that Claimant's mood was anxious, her affect was appropriate, she was alert and oriented times three and had poor concentration. R. 557.

On December 12, 2008, Dr. Oh indicated that Claimant was experiencing severe breathing difficulties with asthma, planned to stop smoking and occasionally experienced anxiety spells. R. 556. Dr. Oh noted that Claimant's thought processes were coherent, relevant, organized and goal oriented, and her thought content was clear. R. 556. Dr. Oh noted that

Claimant's mood was anxious, her affect was appropriate and she was alert and oriented times three. R. 556.

On March 11, 2009, Dr. Oh indicated that Claimant has severe COPD, cannot breath well, is still smoking and applied for disability. R. 555. Dr. Oh noted that Claimant's thought processes were coherent, relevant, organized and goal oriented, and her thought content was clear. R. 555. Dr. Oh noted that Claimant's mood was euthymic, her affect was "full range," and she was alert and oriented times three. R. 555. Dr. Oh indicated that Claimant was doing well. R. 555.

On June 10, 2009, Dr. Oh indicated that Claimant had increased breathing problems and was stressed because her father recently died and her mother needs a lot of attention. R. 609. Dr. Oh noted that Claimant's thought processes were coherent, relevant, organized and goal oriented, and her thought content was clear. R. 609. Dr. Oh noted that Claimant's mood was anxious, her affect was appropriate and she was alert and oriented times three. R. 609.

On June 18, 2009, Dr. Oh completed a mental RFC assessment form. R. 606-08. In the area of understanding and memory, Dr. Oh opined that Claimant is not significantly limited in her ability to remember locations and work-like procedures or understand and remember very short and simple instructions. R. 606. Dr. Oh opined that Claimant is moderately limited in her ability to understand and remember detailed instructions. R. 606.

In the area of sustained concentration and persistence, Dr. Oh opined that Claimant is not significantly limited in her ability to make simple work-related decisions. R. 606. Dr. Oh opined that Claimant is moderately limited in her ability to carry out very short and simple instructions, sustain an ordinary routine without special supervision, work in close proximity or in coordination with others without being distracted, perform within a schedule, maintain regular

attendance and be punctual. R. 606. Dr. Oh opined that Claimant is markedly limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods of time, and complete a workday or workweek without being interrupted by her psychologically based symptoms and perform at a consistent pace without rest periods that are unreasonable in number and length. R. 606-07.

In the area of social interaction, Dr. Oh opined that Claimant is not significantly limited in her ability to ask simple questions, request assistance, maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. R. 607. Dr. Oh opined that Claimant is moderately limited in her ability to interact appropriately with the general public, get along with co-workers without distracting them or exhibiting behavioral extremes and accept instructions and respond appropriately to criticism from a supervisor. R. 607.

In the area of adaptation, Dr. Oh opined that Claimant is not significantly limited in her ability to be aware of normal hazards and take appropriate precautions. R. 607. Dr. Oh opined that Claimant is moderately limited in her ability to travel in unfamiliar places, use public transportation, set realistic goals and independently make plans. R. 607. Dr. Oh opined that Claimant is markedly limited in her ability to respond appropriately to changes in a work setting. R. 607.

On September 5, 2009, Dr. Oh indicated that Claimant was doing better, has breathing difficulties and still smokes. R. 605. Dr. Oh noted that Claimant's thought processes were coherent, relevant, organized and goal oriented, and her thought content was clear. R. 605. Dr. Oh noted that Claimant's mood was anxious, her affect was appropriate and she was alert and oriented times three. R. 605.

On December 11, 2009, Dr. Oh indicated that Claimant was doing well and was experiencing back pain, as well as occasional asthma attacks. R. 628. Dr. Oh noted that Claimant's thought processes were coherent, relevant, organized and goal oriented, and her thought content was clear. R. 628. Dr. Oh noted that Claimant's mood was euthymic, her affect was "full range" and she was alert and oriented times three. R. 628.

On March 5, 2010, Dr. Oh indicated that Claimant was doing well, but recently fainted, fell and sustained a cut on her chin. R. 627. Dr. Oh noted that Claimant's thought processes were coherent, relevant, organized and goal oriented, and her thought content was clear. R. 627. Dr. Oh noted that Claimant's mood was euthymic, her affect was "full range" and she was alert and oriented times three. R. 627.

### 2. Rebecca Peck, M.D.

On August 30, 2006, Rebecca Peck, M.D. conducted her initial evaluation of Claimant. R. 551. Dr. Peck noted that Claimant is seeing Dr. Oh for ADHD and is treating with Adderall. R. 551. Dr. Peck noted that Claimant smokes a pack of cigarettes per day and has a history of asthma and COPD. R. 551. Dr. Peck assessed Claimant with ADHD, COPD, GERD and as being a smoker. R. 551.[1] Dr. Peck gave Claimant a prescription for a smoking cessation medication and informed Claimant she needed to stop smoking. R. 551.

On February 26, 2007, Dr. Peck noted that Claimant was complaining of shortness of breath and had upper respiratory infection symptoms. R. 548. Dr. Peck noted that Claimant indicated she was not taking any asthma medications, but was getting allergy shots and doing well. R. 548. Dr. Peck also noted that Claimant complained of some chest pain when she inhales and exhales. R. 548. Dr. Peck assessed Claimant with asthma exacerbations and prescribed

---

[1] GERD stands for gastroesophageal reflux disease. It is also known as acid reflux disease.

medications, counseled Claimant about smoking cessation and gave Claimant a cardiac referral. R. 548.

On March 13, 2007, Dr. Peck noted that Claimant had gone to the emergency room because she was blacking out at work and at home. R. 536. Dr. Peck noted that Claimant also complained of chest pain. R. 536. Dr. Peck gave Claimant a holter and indicated that her examination of Claimant's asthma was stable. R. 536.

On January 11, 2008, Dr. Peck indicated that Claimant has a persistent cough, has asthma, is frequently sick and gets recurrent bronchitis. R. 531. Dr. Peck prescribed and gave Claimant samples of various medications for her recurrent bronchitis. Dr. Peck also gave Claimant medication samples for her allergies, smoking and GERD. R. 531.

On December 9, 2008, Dr. Peck noted that Claimant has asthma exacerbation and still smokes a lot. R. 529. Dr. Peck noted that Claimant was trying to get disability for her asthma. R. 529. Dr. Peck gave Claimant medication samples for her asthma, told Claimant to continue treating with Dr. Oh for her ADHD. R. 529.

On August 21, 2009, Dr. Peck noted that Claimant has a long history of smoking, asthma and recurrent bronchitis. R. 588. Dr. Peck noted that Claimant is in and out of the emergency room and has lost weight due to being anxious, "despite seeing a psychiatrist (Dr. Oh) who she sees only to get her Vyvanse." R. 588. Dr. Peck indicated that Claimant has severe COPD and gave Claimant medication samples, as well materials to quit smoking. R. 588.

On March 16, 2010, Dr. Peck wrote a note indicating that Claimant appeared "after a while" and has not been compliant with her medications, follow-up visits or following up with her white blood count. R. 646. Dr. Peck indicated that Claimant calls all the time, is given medication samples and she discussed with Claimant that it might be better to treat at a different

clinic.  R. 646.  Dr. Peck indicated that Claimant has had a high white blood count for the past two years and wants Claimant to see hematology or oncology in the event she has a lymphoma, but Claimant stated she does not have time.  R. 646.  Dr. Peck indicated that Claimant is seeking disability, but stated that "I don't feel as her physician that she needs disability, I feel that she should work to help her get over her depression."  R. 646.

In regards to Claimant's COPD and asthma, Dr. Peck indicated that Claimant would continue taking her current medications.  R. 647.  Dr. Peck stated that she could not continue to provide Claimant medication samples "and her noncompliance is worrying me, because she does have medical problems that I am afraid we are missing something with her.  She has got to quit smoking or she will be chronically and recurrently sick."  R. 647.  In regard to Claimant's anxiety and depression, Dr. Peck recommended she talk to Dr. Oh.  R. 647.  Dr. Peck further indicated that "[h]opefully she won't just get more [V]yvance, but can get on a better regimen. She needs counseling and hopefully he can provide this."  R. 647.

### B.  Examining State Consultants

#### 1.  David W. Carpenter, M.D.

On June 12, 2008, David W. Carpenter, M.D., examined Claimant on behalf of the Commissioner.  R. 466.  Dr. Carpenter noted that Claimant has a history of "ADD and asthma," and reports chronic shortness of breath with even minimal activity, but not at rest.  R. 466.  Dr. Carpenter noted that Claimant smokes a pack of cigarettes per day and performs "her activities of daily living without difficulty or assistance."  R. 466.

Dr. Carpenter indicated that Claimant was alert, oriented and in no apparent distress. R. 467.  Dr. Carpenter indicated that Claimant answered questions appropriately, could follow directions without difficulty and did not become fatigued or short of breath during his

examination. R. 467. Dr. Carpenter indicated that Claimant's chest was "[s]ymmetrical with no increase in AP diameter and no accessory muscles of respiration in use." R. 467. Dr. Carpenter indicated that Claimant's heart tones were within normal limits and there were no murmurs, gallops or friction rubs. R. 467. Dr. Carpenter indicated that Claimant's lungs were "[c]lear to auscultation bilaterally. Aeration is good and equal. No wheezing, no rhonchi, no crackles." R. 467.

Dr. Carpenter indicated that Claimant's upper and lower extremities had full range of motion and there were no sensory deficits, motor deficits, joint deformities or joint inflammation. R. 468. Dr. Carpenter indicated that Claimant's fine manipulation skills with her upper extremities were within normal limits. R. 468. Dr. Carpenter indicated that Claimant has slight hammer toe deformities in her second through fourth toes, but she walks normally with good balance. R. 468.

Based on his examination, Dr. Carpenter found that Claimant suffers from asthma and tobacco abuse. R. 468. Dr. Carpenter opined that Claimant is capable of sedentary and light physical activity. R. 468.

### 2. Malcolm J. Graham, III, Ph.D., Clinical Psychologist

On June 24, 2008, Malcolm J. Graham, Ph.D., a clinical psychologist, examined Claimant on behalf of the Commissioner. R. 477. Dr. Graham noted that Claimant first saw a mental health professional in the early 1990's for depression and has subsequently "seen seven mental health professionals for anxiety and depression." R. 478. Dr. Graham noted that, in 2005, Claimant was diagnosed with ADHD and sees a psychiatrist every three months, her last visit being a month ago. R. 478.

Dr. Graham found that Claimant appeared somewhat depressed, but showed no signs of anxiety. R. 478. Dr. Graham found that Claimant did not exhibit any tangential or circumstantial thinking and could relate information rationally, coherently and sequentially. R. 478. Dr. Graham found that Claimant was able to count backward from twenty, count forward to forty by three, recite the alphabet and "recall six digits forward and four digits backward." R. 478. Dr. Graham found that Claimant was oriented as to time, place and person. R. 479. Dr. Graham found that Claimant could recall three out of four words after five minutes, what she ate for breakfast and a recent news story about a dog being stolen from a home. R. 479. Dr. Graham indicated that Claimant showed no indications of perceptual disturbances or hallucinations. R. 479.

Dr. Graham diagnosed Claimant with dysthymia and assessed a GAF score of 65-75. R. 479. Dr. Graham's prognosis was "[g]uarded to possibly good." R. 479. Dr. Graham found that Claimant could manage her funds, so long as she was not abusing drugs or alcohol. R. 479. Dr. Graham indicated that his examination revealed no problems in attention, concentration, short-term or long-term memory. R. 480. Dr. Graham indicated that Claimant began to cry, without explanation, immediately upon entering his office and "appeared to be depressed, for the most part, throughout her evaluation." R. 480. Dr. Graham indicated that there were "no behavioral indications of anxiety or of thought disorder." R. 480.

### C.  Non-Examining State Consultants

On July 8, 2008, Steven Wise, Psy.D., completed a psychiatric review technique. R. 481-94. Dr. Wise indicated that Claimant suffered from the non-severe impairments of dysthymia and "Treated ADHD." R. 481-82, 84. Dr. Wise opined that Claimant has mild limitations on her ability to perform activities of daily living, maintain social functioning and maintain

concentration, persistence or pace. R. 491. Dr. Wise opined that Claimant has had no episodes of decompensation. R. 491.

On July 8, 2008, Huldie Scott, M.D., completed a physical RFC assessment. R. 495-502. Dr. Scott offered a primary diagnosis of asthma and a secondary diagnosis of osteoarthritis. R. 495. Dr. Scott opined that Claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently. R. 496. Dr. Scott opined that Claimant can stand, walk or sit about six hours in an eight-hour workday. R. 496. Dr. Scott opined that Claimant's ability to push and/or pull was unlimited within the weight limitations of her ability to lift and/or carry. R. 496. Dr. Scott opined that Claimant has no postural, visual, manipulative or communicative limitations. R. 497-99. Dr. Scott opined that Claimant should avoid concentrated exposure to humidity and fumes, odors, dusts, gases and/or poor ventilation. R. 499.

On December 4, 2008, John E. Long, M.D., completed a physical RFC assessment. R. 503-10. Dr. Long offered a primary diagnosis of asthma and a secondary diagnosis of foot pain. R. 503. Dr. Long's opinion with respect to Claimant's limitations is practically identical to Dr. Scott's RFC opinion. *See* R. 504-07. The only difference being that Dr. Long opined that Claimant should avoid concentrated exposure to extreme cold, extreme heat, vibration and hazards, as well as fumes, odors, dusts, gases and/or poor ventilation. R. 507. However, Dr. Long found that Claimant has no limitations on being exposed to humidity. R. 507.

On December 9, 2008, Michael Zelenka, Ph.D., completed a psychiatric review technique and a mental RFC assessment. R. 511-27. In his psychiatric review technique, Dr. Zelenka diagnosed Claimant with ADHD, dysthymia and "Anxiety Disorder, NOS." R. 512, 514, 516. Dr. Zelenka opined that Claimant has a moderate limitation on her ability to maintain concentration, persistence or pace. R. 521. Dr. Zelenka opined that Claimant has mild

limitations on her ability to perform activities of daily living and maintain social functioning. R. 521. Dr. Zelenka opined that Claimant has had one or two episodes of decompensation, of extended duration. R. 521.

In his mental RFC assessment, Dr. Zelenka found that Claimant was moderately limited in the following areas: ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods of time; ability to interact appropriately with the general public; and ability to complete a normal workday and workweek without interruptions from her psychologically based symptoms, as well as perform at a consistence pace without rest periods of an unreasonable number and length. R. 525-26. Dr. Zelenka found no evidence that Claimant was limited in her ability to set realistic goals or make plans independently of others. R. 526. Dr. Zelenka found that Claimant was not significantly limited in the areas of understanding, memory, sustained concentration and persistence, social interaction and adaptation. R. 525-26.

Based on Claimant's reports of problems with motivation, concentration, memory and organization, Dr. Zelenka opined that "it is likely that [Claimant] is too forgetful and disorganized to return to her previous work as a medical ass[istant] in a dermatology (or other medical) office." R. 527. Dr. Zelenka opined that "given only simple instr[uctions] to carry out, limited public contact, and allowances for periodic prob[lems] with concentration/memory/emotional problems, [Claimant] retains adequate mental ability to carry out simple instr[uctions] and to relate appropriately to others in a routine work setting." R. 527.

## II.     ADMINISTRATIVE PROCEEDINGS

On April 2, 2008, Claimant filed her Application. R. 168. The Application was denied initially and on reconsideration. R. 96-97. Claimant requested a hearing before an ALJ and a

hearing was held on May 12, 2010. Claimant and a vocational expert testified. R. 26-82. Claimant testified that she has osteoarthritis and her "concentration level is off." R. 36. Claimant testified that she stopped working as a medical assistant for a dermatological surgeon in January 2008. R. 38. Claimant testified that she worked as a medical assistant for various doctors since 2000. R. 37, 40-41. Prior to working as a medical assistant, Claimant testified that she worked as sales clerk in a liquor store and in the mail room of an insurance company. R. 43, 45.[2]

Claimant testified that she has suffered from COPD or shortness of breath since she was twenty-one years old. R. 49-50. Claimant testified that she treated with Dr. Peck until they recently discharged her. R. 50. Claimant testified that she was discharged as a patient because Dr. Peck wanted her to take some tests, but she does not have health insurance and cannot afford Dr. Peck's office visits. R. 50. Claimant testified that she takes Singulair, Symbicort, Ventolin, Albuterol solution and Atrovent solution for her COPD. R. 51-52. Claimant testified that sometimes her medications do not control her COPD and she has gone to the emergency room seven times in the past year because she cannot get her asthma "calmed down." R. 52. Claimant testified that when she goes to the emergency room, she is treated and released. R. 71.

Claimant testified that she has seen Dr. Rhodes, an orthopedic surgeon, and Dr. Malcolm Gotledge for her osteoarthritis. R. 53-54. Claimant testified that she has been given a brace for her thumb and it has twice been injected with cortisone. R. 54. Claimant testified that it is too painful to wring out a washcloth with her left hand, she cannot open a peanut butter jar, but can tie her shoes. R. 54-55. Claimant testified that the pain in her left hand comes and goes with the

---

[2] Claimant testified that, since January 2008, she tried working for Good Sports, Inc., but that lasted less than ten days because she was unable to work the hours required. R. 47-48. The ALJ found this employment was not long enough to be considered substantial gainful activity or past relevant work. R. 48.

pain shooting into her hand.  R. 55.  Claimant testified that she has a bunion on her right foot and crooked toes that get very sore after she stands for a few minutes, and then ache for fifteen minutes after she sits down.  R. 56.

Claimant testified that she has problems with concentration, has stress issues and depression.  R. 57.  Claimant testified that she has mood swings and is stressed every day from things like driving her car.  R. 58.  Claimant testified that she gets panic attacks when her treatment for removing the mucus in her bronchials does not work and she starts breathing harder and harder, afraid she might die.  R. 60.  Claimant testified that she has been treating with Dr. Oh every three months since 2005.  R. 57, 59.

Claimant testified that she can sit for twenty minutes and stand for fifteen minutes before feeling discomfort.  R. 60.  Claimant testified that she could walk from the parking lot into the hotel, but was out of breath when she reached the door.  R. 62.  Claimant testified that she can lift a gallon of milk and a twelve pack of soda, but cannot carry them very far.  R. 62-63.  Claimant testified that her long term and short term memory is impaired and has problems with concentration.  R. 63.  Claimant testified that she was treated for a spontaneous pneumothorax and that some of her x-rays have shown that she has degenerative disc disease.  R. 65-66.

Claimant testified that she wakes up not feeling good and has to take two different treatments and breathe into a nebulizer in order to breathe.  R. 65.  Claimant testified that the Vynase Dr. Oh prescribes for her attention deficit hyperactivity disorder is not doing enough.  R. 67.  Claimant testified that she is smoking a half of a pack of cigarettes per day.  R. 68.  As to her daily activities, Claimant testified that she uses her laptop and drives a person with United Humanitarians for Animals to feed kittens.  R. 69.  Claimant testified that she watches the Lifetime channel on television.  R. 70.  Claimant testified that she has difficulty performing

household chores because she is allergic to dust and has been living with her mother. R. 70. Claimant testified that her mother does most of the housework and they primarily eat microwavable meals. R. 71.

The vocational expert testified that Claimant's past work is classified as light exertional work under the Dictionary of Occupational Titles (hereafter "DOT"). R. 74. The ALJ asked whether a person of the same age and educational background as Claimant could perform her past work with the following limitations: suffers from COPD that is exacerbated by asthma; limited to performing light exertional work; can sit, stand, walk, push and/or pull for six hours in an eight-hour workday; can lift/carry twenty pounds occasionally and ten pounds frequently; can climb or crawl no more than one-third of an eight-hour workday; should avoid concentrated exposure to extreme heat, cold, humidity and environmental fumes or irritants, but can be exposed to the equivalent of a pack of cigarettes per day; and can perform fine manipulative finger activities with her dominant left hand no more than one-third of an eight-hour workday. R. 76-77. The vocational expert testified that this hypothetical person could perform Claimant's past relevant work as a cashier, sales clerk, mail clerk and medical assistant. R. 78. However, the vocational expert testified that this person could not perform Claimant's past relevant work if Dr. Oh's RFC opinion were factored in. R. 80-81.

The ALJ asked the vocational expert whether a person with the same age, educational background, postural limitations, environmental limitations and manipulative limitations in the left hand could perform Claimant's past relevant work with the following additional limitations: lifting and carrying ten pounds occasionally; requires an hour break in the morning and afternoon due to fatigue; will miss part or all of a workday due to involuntary crying, cumulatively totaling

three to four days per month.  R. 78.  The vocational expert testified that these limitations would preclude the hypothetical person from maintaining any employment.  R. 80.

On August 5, 2010, the ALJ issued his decision, finding Claimant not disabled and denying her Application.  R. 12-20.  The ALJ found that Claimant suffers from the severe impairment of COPD "with asthma exacerbations."  R. 14.  The ALJ found that Claimant's hammer toes, chin furuncle/laceration and ADHD are not severe impairments because they do not cause any functional limitations.  R. 15.  The ALJ found that Claimant's osteoarthritis is not a severe impairment because there was a lack of medical documentation.  R. 15.  The ALJ found that Claimant's bronchitis is not a severe impairment because it responds to treatment.  R. 15.  The ALJ found that Claimant's chin furuncle/laceration is not a severe impairment because it was a one-time occurrence.  R. 15.  The ALJ found that Claimant's depression, dysthymia and anxiety are not severe impairments because they are situational.  R. 15.  The ALJ also found that Claimant's anxiety and dysthymia are not severe impairments because they cause no more than minimal limitations in Claimant's "ability to perform basic mental work activities."  R. 15.

The ALJ found that Claimant has the RFC to perform light work with the following limitations:  can lift and/or carry twenty pounds occasionally and ten pounds frequently; can sit, stand, walk, push and/or pull six hours in an eight-hour workday; can occasionally crawl, climb and perform fine fingering and/or manipulating; should avoid concentrated exposure to extreme temperatures, humidity and environmental pollutants or irritants.  R. 17.  In making this RFC finding, the ALJ gave great weight to Dr. Carpenter's RFC opinion because "it is consistent with [his] objective evaluation findings."  R. 18.[3]  The ALJ gave significant weight to Dr. Graham's RFC opinion because it was corroborated by his examination findings.  R. 19.  The ALJ gave

---

[3]  The ALJ erroneously refers to Dr. Shoemaker as examining and providing an RFC opinion on June 12, 2008.  Dr. Carpenter examined and provided the RFC opinion.  *See* R. 466-68.

significant weight to the RFC opinions of Drs. Scott and Long because "they are consistent with the bulk of the medical evidence." R. 18-19.

The ALJ gave little weight to Dr. Oh's RFC opinion because "it has no basis and . . . is not consistent" with Dr. Oh's consistent observations that Claimant "exhibited coherent/relevant/organized thought process, clear speech, average intelligence, intact judgment/insight and clear though content. In addition, the [C]laimant testified that she gets along with others and has friends." R. 19. The ALJ gave less weight to Dr. Zelenka's opinion that Claimant suffers from a severe mental impairment because "there is no basis upon which to support this opinion." R. 19.

After analyzing and weighing the opinions of the treating, consulting and non-examining doctors, the ALJ concluded:

> In sum, the above residual functional capacity (RFC) assessment is supported by the medical opinion of Dr. [Carpenter], who also found that the claimant was able to perform light work. The undersigned's determination that the claimant is able to perform less than a full range of light work is also buttressed by the medical records from Dr. Peck and Halifax Health Center, which indicated that the claimant possessed clear lungs with normal cardiovascular and respiratory function. In addition the undersigned's findings regarding the claimant's RFC is also corroborated by the results of the claimant's recent probative tests (i.e. x-rays), which failed to show any indications of acute cardiopulmonary disease/process. Furthermore, the medical evidence suggested that the claimant's pulmonary condition might be exacerbated by the claimant's smoking habit and by the claimant's treatment non-compliance.

R. 19-20. Thus, the ALJ supported his RFC finding with Dr. Carpenter's RFC opinion and the medical evidence from Dr. Peck, Halifax Health Center and recent medical tests.

## III.    LEGAL STANDARDS

### A.    THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has

established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B.    STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

## IV. ANALYSIS

### A. Giving Little Weight to Dr. Oh's RFC Opinion

Claimant raises three issues on appeal. Claimant first challenges the ALJ's decision to give little weight to Dr. Oh's RFC opinion. Claimant asserts the ALJ gave little weight to Dr. Oh's RFC opinion because the ALJ found it was inconsistent with Dr. Oh's mental status evaluations and Claimant's testimony that she gets along with others and has friends. Doc. No. 16 at 12-13. Claimant argues that these reasons are not supported by substantial evidence in the record and, therefore, the ALJ did not articulate good cause for giving Dr. Oh's RFC opinion little weight. Doc. No. 16 at 12.

The Commissioner argues that the ALJ properly gave little weight to Dr. Oh's RFC opinion because it is inconsistent with his own treatment notes, "which contain mostly normal mental exam findings." Doc. No. 17 at 6 (internal citations omitted). The Commissioner argues that Dr. Oh's RFC opinion is not bolstered by the medical record in light of Dr. Graham's RFC

opinion. Doc. No. 17 at 6-7. The Commissioner also argues that Plaintiff's "statements" that she "gets along with others, spends time with others either by visiting them or speaking on the phone, shops in grocery stores, uses the computer, does photography, and volunteers with United Humanitarians" undermines Dr. Oh's opinion. Doc. No. 17 at 7.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. The Eleventh Circuit recently clarified the standard the Commissioner is required to utilize when considering medical opinion evidence. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion <u>requiring the ALJ to state with particularity the weight given to it and the reasons therefor</u>. *Id.* (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981) (emphasis added)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (failure to clearly articulate reasons for giving less weight to the opinion of treating physician constitutes reversible error).

Absent good cause, the opinions of treating physicians must be accorded substantial or

considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 F. App'x. 266, 269 (11th Cir. 2005).[4]   "The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Id*.   Moreover, the opinions of a non-examining physician do not constitute substantial evidence when standing alone. *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

In his mental RFC opinion, Dr. Oh found that Claimant has marked and moderate limitations in the areas of understanding and memory, sustained concentration and persistence, social interaction and adaptation.   R. 606-07.   The ALJ gave little weight to Dr. Oh's RFC opinion because it was inconsistent with his "mental status evaluation findings, wherein Dr. Oh consistently observed that the claimant exhibited coherent/relevant/organized thought processes, clear speech, average intelligence, intact judgment/insight and clear thought content."   R. 19 (internal citations omitted).

During the course of his five year treating relationship, Dr. Oh never indicated in his medical records that Claimant had any deficiencies in her short term memory, long term memory or attention.   R. 555-71, 605, 627-28.   In his initial assessment, Dr. Oh indicated that Claimant's recent and remote memory were "ok."   R. 571.   Only once, in his initial assessment, did Dr. Oh indicate that Claimant's attention was impaired.   R. 571.   Dr. Oh noted that Claimant had poor

---

[4] In the Eleventh Circuit, unpublished decisions are not binding but are persuasive authority.

concentration on only five occasions. R. 555, 557, 559, 561, 566. In his three most recent treatment notes, Dr. Oh did not indicate that Claimant had poor concentration. R. 605, 627-28. Dr. Oh also consistently found Claimant's thought processes to be coherent, relevant, organized and goal-oriented, and Claimant's thought content to be clear. R. 555-71, 605, 627-28. Dr. Oh found that Claimant's impulse control was intact and that she had a cooperative attitude. R. 555-71, 605, 627-28. Dr. Oh consistently found Claimant's judgment and insight to be good or fair. R. 555-71, 605, 627-28. The ALJ's finding that Dr. Oh's mental RFC opinion should be given little weight because it was inconsistent with finding in his medical records which reflect "coherent/relevant/organized thought processes, clear speech, average intelligence, intact judgment/insight and clear thought content" is supported by substantial evidence.

The ALJ also gave little weight to Dr. Oh's RFC opinion because Claimant "testified that she gets along with others and has friends." R. 19. This reason is not supported by the hearing transcript. When asked if she gets along with others, Claimant testified that she is nice to everyone but feels like "I am picked out of the bunch . . . ." R. 58. Claimant never testified that she has friends. *See* R. 28-82. Thus, the ALJ's stated basis for giving little weight to Dr. Oh's RFC opinion is predicated on a misstatement of fact.[5]

A "single erroneous statement by an ALJ standing alone does not require remand." *Washington v. Astrue*, No. 8:08-CV-1614-T-27GJK, 2009 WL 2949034 at * 14 (M.D. Fla. Sept. 14, 2009). A misstatement of fact "may constitute harmless error if the ALJ applies the proper legal standard." *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 665 (11th Cir. 2010).

In *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983), the Eleventh Circuit concluded that the ALJ's incorrect statement that the claimant was "closely approaching advanced age" was

---

[5] In her adult function report, Claimant indicated that she talks to a couple of close friends on the telephone, does not have problems getting along with others and can get along with anyone. R. 247-49. The ALJ did not cite this record evidence to support his decision.

harmless where the ALJ actually and correctly applied the claimant's "vocational factors on a section of the grids for those closely approaching retirement age[.]"  In *Jordan v. Astrue*, 617 F. Supp. 2d 1154, 1163 (M.D. Fla. 2008), the ALJ incorrectly stated that the claimant could read a newspaper and that physical therapy records indicated claimant only demonstrated a moderate level of pain.  The court found these misstatements to be harmless because the outcome would not change even if the ALJ had not misstated the record.  *Id.* at 1164.  In *Rhodes v. Astrue*, No. 8:07-CV-18-T-MAP, 2008 WL 360823 at *2 (M.D. Fla. Feb. 8, 2008), the ALJ found that the claimant was not fully credible, in part, because the claimant's treating neurologist stated the claimant could return to work.  The court reviewed the treating neurologist's records and "found no specific statement that the [claimant] could return to work . . . ."  *Id.* at *3.  The court found this misstatement did not require reversal "where the ALJ's finding otherwise has strong support" in the record.  *Id.*

In this case, the ALJ's misstatement of fact was harmless because the ALJ applied the correct legal standards in determining to give little weight to Dr. Oh's opinion.  Specifically, the ALJ found that Dr. Oh's RFC opinion conflicted with his medical records.  This finding, as set forth above, is supported by substantial evidence.  Thus the ALJ's misstatement of fact is not a basis for reversal.  *See Diorio*, 721 F. 2d at 728; *Jordan*, 617 F. Supp. 2d at 1164; *Rhodes*, No. 8:07-CV-18-T-MAP, 2008 WL 360823 at *2.

### B.  Non-Severe Limitations and Impairments

Claimant's second argument challenges the ALJ's failure to find that she suffered from certain limitations and severe impairments.  Claimant argues that the ALJ should have found that she suffers from the severe impairments of anxiety and fainting.   Doc. No. 16 at 16-18, 20.  Claimant argues that the ALJ erred in not finding that she is unable to work full-time and has

limitations with her concentration, persistence and pace. Doc. No. 16 at 15-16, 18-20. Claimant also argues that the ALJ erred in not making or including any findings regarding the side effects of her medications "or hospitalizations from ineffectiveness in his findings." Doc. No. 16 at 22.

The ALJ was not required to find that Claimant suffers from the severe impairment of fainting. Claimant did not allege in her Application that fainting is a severe impairment. *See* R. 168. At the hearing, Claimant testified that she fainted one time and cut her chin on a counter. R. 70. Claimant never testified that fainting is a severe impairment. The ALJ is not required to investigate an impairment that is neither alleged in a claimant's application, nor testified to at the hearing. *See Street v. Barnhart*, 133 F. App'x. 621, 627 (11th Cir. 2005) (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1995)). Accordingly, the ALJ did not err in failing to find that Claimant suffers from the severe impairment of fainting.

The ALJ found that Claimant suffers from severe impairments and non-severe impairments, one of the non-severe impairments being anxiety. R. 14, 16. In determining Claimant's RFC, the ALJ both acknowledged and considered Claimant's testimony that she suffers from anxiety. *See* R. 17-18. Even if the ALJ erred in finding that Claimant's anxiety was a non-severe impairment, it is not reversible error.

In *Delia v. Commissioner of Social Security*, 433 F. App'x. 885, 887 (11th Cir. 2011), the claimant argued that the ALJ erred in not finding his chronic pain syndrome and depression to be severe impairments. The Eleventh Circuit concluded that the ALJ's finding that these mental impairments were not severe was not supported by substantial evidence because the medical record showed these mental impairments caused restrictions in claimant's daily living, social functioning and maintaining concentration, persistence or pace. *Id.* This error notwithstanding, the Eleventh Circuit stated:

> [h]owever, the ALJ deemed several of [claimant's] other medical impairments to be severe and therefore continued on in the sequential inquiry. The ALJ considered [claimant's] mental impairments at steps three, four and five. <u>Because the ALJ gave full consideration to the consequences of [claimant's] mental impairments on his ability to work at later stages of the analysis, the error at step two was harmless</u> and is not cause for reversal.

*Id.* (emphasis added). Thus, the Eleventh Circuit concluded that an ALJ's finding that a claimant does not suffer from a severe mental impairment is harmless error if the ALJ fully considers the consequences of a claimant's mental impairments at the later stages of the sequential analysis.

In the case at bar, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . ." when making his RFC determination. R. 17. The ALJ also expressly cited Claimant's testimony that she has limitations as a result of her anxiety and Dr. Zelenka's psychiatric review technique, wherein Dr. Zelenka diagnosed Claimant with anxiety disorder. R. 19. Thus, the ALJ determined that Claimant's anxiety was a non-severe impairment at step two, and considered Claimant's anxiety again when determining her RFC.

The ALJ did not err in finding that Claimant's limitations in concentration, persistence and pace are non-severe. Claimant's argument is predicated on her testimony that she is unable to concentrate, Dr. Oh's finding that she is markedly limited in her ability to maintain concentration and attention for long periods of time and Dr. Zelenka's opinion that she has a moderate limitation in concentration, persistence or pace. Doc. No. 16 at 18. The ALJ considered Claimant's testimony that she is unable to concentrate, but found that Claimant's testimony regarding same was "not credible" to the extent it conflicted with his RFC assessment. R. 18. The ALJ considered Dr. Zelenka's opinion and gave it little weight. R. 19. Neither the ALJ's credibility determination, nor the decision to give Dr. Zelenka's opinion little weight is

being challenged on appeal. As set forth above, the ALJ articulated good cause for giving Dr. Oh's opinion little weight. The ALJ did not err in failing to find that Claimant has severe limitations in concentration, persistence or pace.

In arguing that the ALJ should have found that she has a limitation on her ability to work full time, Claimant once again relies on her testimony and findings made by Dr. Oh and Dr. Zelenka. Doc. No. 16 at 15. For the reasons set forth above, this argument should be rejected.

Finally, the ALJ was not required to address the side effects of Claimant's medications. Claimant testified that taking Vyvanse made her feel "edgy" and "jumpy," and taking Xanax made her feel "very meehhhhhh, groggy." R. 59. Claimant did not testify that these side effects standing alone, or in combination with her other impairments, were severe enough to be disabling. In her memorandum of law, Claimant points out that "[d]octors repeatedly <u>discussed medication side effects</u> with Ms. Buffington ([R.] 330-31, 326, 566)." Doc. No. 16 at 21 (emphasis added). Notably, Claimant does not suggest that any doctor opined that the side effects of Claimant's medications were severe enough to be disabling. Claimant points to no record medical evidence that suggests the side effects Claimant experiences are severe or disabling. The ALJ did not err in failing to make findings concerning the side effects of Claimant's medications. *See Walker v. Comm'r of Soc. Sec.*, 404 F. App'x. 362, 367 (11th Cir. 2010) (ALJ not required to elicit further testimony about claimant's medication side effects when claimant did not testify the side effects were so severe as to be disabling and there was no medical evidence to support such a finding).

## C.  Limitations Contained in the Hypotheticals to the Vocational Expert

Claimant argues that the ALJ erred in relying on the vocational expert's testimony because he did not include her "non-exertional limitations from anxiety, concentration, inability

to complete a workday or workweek, or medications" in the hypotheticals posed to the vocational expert. For the reasons set forth above, the ALJ was not required to find these limitations severe. An ALJ is not required to include findings that he rejects or impairments that are not supported by substantial evidence in the hypotheticals posed to a vocational expert. *See Wright v. Comm'r of Soc. Sec*, 327 F. App'x. 135, 137 (11th Cir. 2009). Accordingly, the ALJ did not err in including these limitations in the hypotheticals posed to the vocational expert.

## V.    CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that:

1.     The final decision of the Commissioner be **AFFIRMED**; and

2.     The Clerk be directed to enter judgment in favor of the Commissioner and close the case.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RECOMMENDED** in Orlando, Florida on July 26, 2012.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Richard A. Culbertson, Esq.
Law Office of Richard A. Culbertson
3200 Corrine Drive
Suite E
Orlando, Florida 32803

John F. Rudy, III
U.S. Attorney's Office

Suite 3200
400 N. Tampa St.
Tampa, Florida 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Christopher Harris, Branch Chief
Avni Gandhi, Assistant Regional Counsel
Social Security Administration
Office of the General Counsel
Sam Nunn Atlanta Federal Center
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable Morton J. Gold, Jr.
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Office
8 Southern Oaks Court
2nd Floor
Savannah, GA 31405